## NATIONAL LABOR RELATIONS BOARD v. ENID CO–OP. CREAMERY ASS'N.

### No. 3320.

Circuit Court of Appeals
Tenth Circuit.

Aug. 20, 1948.

Dominick L. Manoli, of Washington, D. C. for National Labor Relations Board (David A. Morse, Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Leslie J. Capek, Atty., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

E. S. Champlin, of Enid, Okl. (Nathan Scarritt, of Enid, Okl. on the brief), for respondent.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The ultimate question presented here is whether the record evidence warrants the enforcement of an order of the National Labor Relations Board, directing the respondent to cease and desist from interfering with, restraining or coercing its employees in the free exercise of their collective bargaining rights, guaranteed by Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157; to rescind a posted rule prohibiting any "union discussions or activities whatsoever while on duty", and to post appropriate notices evidencing compliance with the order.

The order is based upon the Board's finding that the related statements and conduct of the respondent's supervisory employees and the posting of the no solicitation rule constituted unfair labor practices within the meaning of Section 8(1) of the Act, 29 U.S.C.A. § 158(1).

When the no solicitation rule was posted on June 8, 1944, and this case was tried in January, 1945, this and other courts had indicated that a rule of this nature was not

per se an unfair labor practice. Thus, we had said that the Act did not proscribe the right of an employer to forbid solicitation on its property, provided the rule was promulgated in good faith and was "not merely a device to obstruct or impede self-organization". N.L.R.B. v. Denver Tent & Awning Co., 10 Cir., 138 F.2d 410, 411; Boeing Airplane Co. v. N.L.R.B., 10 Cir., 140 F.2d 423, and cases cited therein. When, however, the case came on for argument, the Supreme Court in Republic Aviation Corp. v. N.L.R.B., 324 U.S. 793, 65 S.Ct. 982, 988, 89 L.Ed. 1372, 157 A.L.R. 1081, had expressed the more stringent view that a rule prohibiting no solicitation outside working hours, although on company property, "must be presumed to be an unreasonable impediment to self-organization * * * in the absence of evidence that special circumstances make the rule necessary in order to maintain production or discipline."

In this rather anomalous situation we sustained the respondent's motion to remand, for the specific purpose of hearing testimony on the question whether, in the light of the authoritative decisions, special circumstances justified the condemned rule. On remand, the Board apparently declined to take further testimony, but modified its original order by deleting therefrom the provisions relating to the recission of the no solicitation rule.

The Board now seeks enforcement of its order, as thus modified, contending in essence that the no solicitation rule was none the less evidence of unfair labor practices, which when considered in connection with the entire record is wholly sufficient to warrant enforcement. See Virginia Electric & Power Co. v. N.L.R.B., 319 U.S. 533, 63 S.Ct. 1214, 87 L.Ed. 1568.

In view of the failure of the Board to hear testimony on the issues framed by the order of remand, and the abandonment of its recission order, we must presume that the order was, in the special circumstances, necessary to maintain production or discipline. Indeed, the record shows that the rule was permissibly invoked on at least one occasion for that purpose.[1] The stated purpose of the notice was "to maintain peace and harmony among our employees", and was intended to be in accordance with "the policy of the union". The notice went on to state "we want our employees to know that it is not necessary to belong to any union to work for this Association, neither is it necessary to refuse to belong to a union to work for this Association. This is a question for each employee to decide for himself without pressure or prejudice from the union or the employer". We can find nothing either overtly or covertly inimical in this statement. Cf. N. L. R. B. v. Virginia Electric & Power Co., 314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348; Boeing Airplane Co. v. N. L. R. B., 10 Cir., 140 F.2d 423; N. L. R. B. v. American Tube Bending Co., 2 Cir., 134 F.2d 993, 146 A.L.R. 1017.

The course of conduct of the respondents' supervisory employees relied upon by the Board to support enforcement, consists of statements by them to employees during the union's campaign to organize the plant. The statements were made to various employees at their homes, on the street, and wherever they happened to meet. They

---

[1] On June 8, 1944, the same day on which the no solicitation rule was posted, the respondent's manager handed employee Turner a letter, which reads as follows:

"I understand both from over-hearing your conversation and from personal observation and from reports of other employees, that on company time, you have engaged in an altercation with another employee on the subject of the union, and that you made threats of bodily injury against such employee.

"This violates the rules of this company against fighting or altercations on company time, and also violates the rules of this company against soliciting union membership or talking union business on company time or on company premises.

"Any repetition of the violation of these rules, either by yourself or any other employee, will make you or any other violating employee subject to immediate discharge."

Turner was subsequently discharged for insubordination. The Board found, however, that the discharge was not discriminatory, and inferentially approved the letter.

were undoubtedly calculated to persuade the employees not to join the union. Thus, they were told that they would derive no benefit from joining a union; that the wages they were being paid were higher than the wages paid in similar plants, and that if the employees were unionized they might have to take a reduction in salary; that if they joined the union and failed to pay their dues they would be discharged, and other "disadvantages" of union membership were pointed out. But, there is no evidence of any direct or subtle threats of coercion. No one was led to believe that membership in the union would affect his employment in any way, and there is no evidence whatsoever that membership in the union or membership activities prejudiced any employee.

The Act proscribes interference, restraint and coercion—it does not proscribe "free trade of ideas". N. L. R. B. v. Virginia Electric & Power Co., supra; Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430. The Board has a wide latitude in appraising facts and drawing inferences therefrom. It has the primary responsibility for the administration of the Act and to that end, the right and duty to determine when facts constitute unfair labor practices. But we, along with the Board, have the duty to balance the employer's inalienable right of free speech and expression against the right of the employees to freedom of self-organization. See N. L. R. B. v. Continental Oil Co., 10 Cir., 159 F.2d 326. In that process, we have said that so long as persuasion does not amount to coercion, it is within the guaranty, but that when words of persuasion are uttered by one who holds the power of coercion, it is often difficult to attain the delicate balance between the two. N. L. R. B. v. Continental Oil Co., supra. If, however, an employer has the right not only to inform but to pursuade to action, see Thomas v. Collins, supra, he surely may tell an employee that, in his judgment, it would not be beneficial for him to join a union if he also makes it plain that such employee has a free choice without fear of reprisal.

Judged by this test, we are convinced that the statements relied upon by the Board are wholly insufficient to warrant enforcement.

The order is reversed, with directions to dismiss.