## NATIONAL LABOR RELATIONS BOARD
## v.
## W. T. GRANT CO.
## No. 6686.

United States Court of Appeals
Fourth Circuit.
Argued Nov. 20, 1953.
Decided Dec. 18, 1953.

Frederick U. Reel, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Washington, D. C., and Wiley M. Craft, Attorney, National Labor Relations Board, Washington, D. C., on brief), for petitioner.

Eugene M. Foley, New York City, for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The National Labor Relations Board seeks enforcement of an order directing W. T. Grant Company of Elkins, West Virginia, to cease and desist granting wage increases to its employees during

the pendency of a representative petition in order to induce them to vote against a labor organization, and from interrogating its employees about attendance at a union meeting and advising them that collective bargaining with the labor organization would be futile, and from threatening to close its Elkins store in the event of excessive demands or a strike, or in like manner interfering with or coercing them in exercise of their rights in violation of the National Labor Relations Act, as amended, 29 U.S.C.A. § 151 et seq.

The question is whether substantial evidence in the record as a whole supports the finding of the Board that the Company violated Section 8(a) (1) of the statute by engaging in actions to which the cease and desist order was directed. The Elkins store has not been organized by a labor union. In February 1952 Retail Clerks International Association began an organizational campaign among the employees and in March filed a representation petition which was followed by a hearing on April 9th and a direction that an election be held on May 23rd.

The circumstance upon which the Board mainly relies to support its decision was the grant of a pay increase to seventeen of its twenty-two employees between the date of the hearing and the date of the election. The Board held that under the circumstances of the case the employer granted the wage increase for the purpose of discouraging union activity.

In addition the Board called attention to a dinner which was given by the store to its employees in a private dining room in a local restaurant the evening before the election. At this dinner the store manager and the district manager of the Company addressed the employees and told them that they would not be benefited by joining the union because the Company operated the store in accordance with the Grant Store manual governing the numerous stores of the Grant system and would continue to do so regardless of what the union might demand. An instance was given by the speakers of the rejection of union demands at one of Grant's New York stores which was followed by a strike and the removal by the Company of some of its merchandise from the store and finally the watering down of the union's demands in order to end the strike. The only other circumstance urged by the Board on this appeal occurred two or three weeks after the election when in the course of a friendly conversation between the store manager and an employee the manager stated in answer to a question that in the event of a strike, Grant would probably close the store and, if it continued too long, move out since they had around five hundred stores and one store would not be missed.

We are unable to find in the record substantial evidence that the employer violated Section 8(a) (1) of the statute by interfering with, restraining or coercing its employees in the exercise of their statutory rights. There was little or no communication between the management and the employees with respect to the unionization of the store prior to the dinner; and the right of the management to give the dinner and to present its views in opposition to those which the union had been free to present is not disputed. There was no duress or over persuasion at the dinner. The employees were free to come or not, and having come, to leave, and four of them left early; and those present were told that they could do as they pleased about voting for the union or joining it and that no one would be discriminated against for doing so.

We do not find that the statement of facts made by the managers relative to the operation of the Grant stores under the guidance of the manual, or the reference to the New York strike and its settlement, amounted to coercion or interference with the employees in the exercise of their rights. It may be taken for granted that during the organization campaign the advantages of

membership in the union were fully explained by its representatives. The casual and friendly conversation between the manager and one of the employees two or three weeks after the union had waged its unsuccessful campaign is hardly worthy of mention.

■ The gist of the case is the Board's finding that the increase in wages during the campaign was made to discourage union membership and amounted to an unfair labor practice. We do not think that the evidence taken as a whole supports this finding. The Board mentions but belittles the uncontradicted evidence that the increase was not considered or made until the manager of the store was informed by the manager of a rival Murphy store in the same block that he intended to raise the wage level in his store. Grant cannot be condemned for taking this fact into consideration and acting upon it promptly, especially as the evidence indicates that Grant prided itself on paying its employees as well as any store in Elkins. Certainly it cannot be laid down as a governing rule that during a union campaign, management must deny to its employees increased advantages which in the absence of the campaign would be granted. It should be noted that in this case there was no certified union with which the employer could bargain and therefore the case does not fall within the ruling that an employer should not grant an increase of wages without notice to a duly appointed bargaining agent, since such action minimizes the influence or organized bargaining. See May Dept. Stores Co. v. National Labor Relations Board, 326 U.S. 376, 385, 66 S.Ct. 203, 90 L.Ed. 145. We do not question the decisions which hold that illegal interference with the rights of employees may be accomplished by allurement as well as by coercion. See for example Western Cartridge Co. v. N. L. R. B., 7 Cir., 134 F.2d 240, 244. But when all the facts in the pending case are carefully considered, it is seen that the Board's conclusion that the purpose and effect of the wage increase was unlawful and unfair is based only on an inference too tenuous to support its order. Enforcement will therefore be denied and the order will be set aside.