NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BROOKSIDE INDUSTRIES, INC.,
Respondent (two cases).

Nos. 8544, 8586.

United States Court of Appeals
Fourth Circuit.

Argued June 8, 1962.

Decided Sept. 13, 1962.

Elliott Moore, Atty., N. L. R. B. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Samuel M. Singer, Atty., N. L. R. B., on brief), for petitioner.

R. D. Douglas, Jr., Greensboro, N. C. (Julius J. Gwyn, Reidsville, N. C., Douglas, Ravenel, Josey & Hardy, Greensboro, N. C., and Gwyn & Gwyn, Reidsville, N. C., on brief), for respondent.

Before SOBELOFF, Chief Judge, and BRYAN and BELL, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Unfair labor practices were charged by Amalgamated Clothing Workers of America, AFL-CIO, to Brookside Industries, Inc. (in No. 8544) in specified conduct of supervisors and agents in interfering with and restraining union membership of employees, and in discharges of 8 employees, in violation of the National Labor Relations Act, § 8(a) (1) and (3).[1] Additionally (in No. 8586) the termination of employment of a supervisor was alleged to violate § 8(a) (1). Orders sustaining the accusations in respect to 3 of the 8 employees and upholding the other charges, with some exceptions, were entered by the National Labor Relations Board, which now asks the orders' enforcement.

While the evidence is well divided on the positions of the employees and employer, there is on the whole record substantial proof to support the majority of the Board's conclusions. We find the orders generally appropriate and enforce them in accordance with the petition of the Board as we affirm it.

I. Confessedly the company was opposed to the unionization of its plant. Activity for the entrance of the union commenced in June 1960 at a meeting of the employees on June 9, 1960 in Reidsville, North Carolina where Brookside was located. Dissuasion of the employees took the form of speeches by company officials to assemblies of employees on June 15 and thereafter, and—later in the month—a circular letter was sent to the employees. These the Board found entirely legitimate.

It found objectionable, however, the attendance of two supervisors at a meeting of the employees on June 23. On that occasion the two made their presence known and were invited to remain— and did stay—in the meeting, participating afterwards in the social gathering. They were informed by the chairman they should not repeat the incident. The next day at a supervisors meeting in the plant, they were reprimanded by the company for their actions and instructed never to attend again. The incident was not repeated by these or other supervisors. Absent stronger circumstances, we do not believe the evidence upholds the Board's finding that the two supervisors thereby interfered with or restricted the employees in their organizational rights.

Bessie Oliver, a head frontlady (ranking above a supervisor), queried Martha Bailey in the first aid room about her knowledge of the union. Although previously signing a union card, she denied knowledge of the union. Bailey was also asked if she knew other employees who had signed cards. This too she denied. She was requested to find out if anyone else had executed a card and to

1. 29 U.S.C.A. 158(a) (1) and (3):
   "Unfair labor practices
   "(a) It shall be an unfair labor practice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

*    *    *    *    *
   "(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization; * * *."

let the frontlady know about it. In this connection Bailey was told such activities might help her as well as her fellow-workers since the plant might be closed rather than admit the union. The last statement was shortly thereafter repudiated by the company's attorney in an address to all the plant employees. The Board made no point of Oliver's statement in this latter respect in view of the repudiation, but it did find restraint and interference in the interrogation and request for future information of Bailey by Oliver. We cannot hold the Board unjustified in this judgment of her conduct.

■ In late July Lee Head was retained as Director of Human Relations by Brookside. His function was to ascertain "what was troubling the employees and to make recommendations as to what could be done to eliminate the troublesome situations". From time to time he held group meetings with the employees in the lunchroom during the workday. On these occasions he stated that some of the clerk employees had asked about the procedure for obtaining the return of their union cards, meaning the cancellation of their membership. He told them that as far as he knew it could only be done by a request to the union representative. In response to a question as to how they might indicate loyalty to the company, he gave them his opinion that they might circulate a petition among the employees just as the union circulated union cards. Upon his suggestion, one supervisor told the clerks under her—approximately ten—to see him if they were interested in retracting their membership.

Disagreeing with the Board, we do not think Head here overstepped the line between the right of free speech—as permitted by section 8(c)—and coercion. There were no threats or reprisals of any kind but merely an explanation of the employee's rights. N. L. R. B. v. Sun Co., 215 F.2d 379, 381 (9 Cir. 1954); N. L. R. B. v. Enid Co-op. Creamery Ass'n, 169 F.2d 986, 987 (10 Cir. 1948); P. & V. Atlas Industrial Center, 112 N.L.R.B. 144. Cf. N. L. R. B. v. W. T.

Grant Co., 208 F.2d 710 (4 Cir. 1953). Here was not the aggressive fostering of deunionization decried in the precedents cited by the Board: N. L. R. B. v. Hill & Hill Truck Line, Inc., 266 F.2d 883 (5 Cir. 1959), and N. L. R. B. v. Birmingham Publishing Co., 262 F.2d 2 (5 Cir. 1958).

Head approached one of the employees who had been active in attendance of weekly union meetings and soliciting memberships. He asked her how many were at the meeting the night before, saying he wished to keep abreast of union progress. She avoided answer at that time and on his suggestion they retired to the cafeteria for further conversations. There she again refused to disclose the number at the meeting. This we agree was evidence of interference as the Board has determined. Although there was no direct intimidation, it could be found to be undue persistence amounting to the coercion prohibited by section 8(a) (1). See N. L. R. B. v. Syracuse Color Press, Inc., 209 F.2d 596, 599 (2 Cir. 1953).

■ II. Employees Mary Strader and Lillian May Adkins were both discharged on July 15, 1960. The justification was excessive conversing during work. The discharge record listed insubordination as the reason, said to describe a violation of the standing order against undue conversation. The Board found—and on an adequate record—that the discharges were in actuality prompted by activities for unionization of the plant. Thus the discharges constituted interference and restraint of union membership contravening section 8(a) (1), and discrimination to discourage such membership, violating section 8(a) (3).

Mary Strader had worked for Brookside from February 1959 until July 15, 1960, save for a three-month suspension in the fall of 1959 because of ineligibility under a Government contract for her nonage. In the month just prior to her discharge she had been given a 10% per hour raise in salary. The company, we think, was well aware of her advocacy of a union. Positive evidence was adduced

of her over-talking and of warnings to her. In addition, the company mentions one instance in which she declined to correct defective work; this refusal she later retracted with grace. We cannot say, however, the Board was not warranted in its conclusion.

Lillian May Adkins had worked at the plant uninterruptedly since September 1958. The Board found she too was an earnest advocate of unionism. After discharge, her supervisor told her the company was "foolish" in firing her, especially as she was the only one who met production demands. On balance, the evidence may be said to sustain the Board.

Cliffie Bolden was discharged on July 28, 1960. She had been reported as threatening another employee with physical harm if she did not join the union. Literally her words and action were menacing, but the Board was not unwarranted in finding that she had no such intent. Indeed, she so expressed herself to the offended employee immediately after the incident and offered an apparently sincere apology. She was charged with an earlier like instance, but that also was hardly serious, and was not too strongly established.

Said to be one of the best workers at the plant, she was attentive in encouraging the union and this undoubtedly was known to the company. Her discharge was attributed to the threats. The Board held that ground untenable. In this it found the same violations of the Act as those with regard to Strader and Adkins. This determination was permissible.

III. Louise J. Moore, the sole charging Party in No. 8586, entered the employ of Brookside in December 1958. Early in 1959 she became a supervisor over 40 to 45 girls. She was discharged on October 17, 1960, with freedom to work out a two-week notice and the right to take off time to seek another position. A letter of recommendation was given her. On October 19 she was released unconditionally and with two weeks compensation. On her record was the entry that her separation was not attributable to fault on her part.

Her husband was also an employee of the company, though not in a supervisory capacity. From time to time she was asked to aid the company in having him drop his union affiliation and change to the company's "side of the fence". She was also asked to obtain from him information of union progress, its membership and standing with the employees. This she attempted without success.

In the hearing before the Trial Examiner in the proceedings now before the Court in No. 8544, Louise Moore had been summoned as a witness both by the General Counsel of the Board and by Brookside. The former did not call her. Then, interviewed by the attorney for the employer late in the proceedings, she told him for the first time her husband had related to her the names of those who were at the union meeting of June 23, 1960, the one attended by the two supervisors. The company states that this was its first knowledge of any disclosure by her husband to Louise Moore of union activities. Thereupon, it is said, Brookside decided not to put her on the witness stand in that proceeding because her testimony might indicate she was acting as a tattler of union information. The basis for her discharge, it asserted was the fear that her presence on the supervisory staff provided prima facie basis for unfair labor practice accusations in future discharges, in that the company would be charged with obtaining union information about other employees through her.

All such importunities of Louise Moore and every other inference of undue interrogation upon this supervisor were staunchly denied by the company. It maintained that Louise Moore was fired because of the conflict in interest occasioned by her dual position of supervisor and wife of a non-supervisory employee.

The Board found this explanation unacceptable. It noted that from the entry of the union at the plant in June 1960 until her discharge in October of the same year, the company was quite aware

of the conflict in her situation but in no wise objected. Calling the Company's explanation a pretext, the Board concluded that the real reason of discharge was an alleged breach of trust, in that she had not relayed to the company her husband's account of the June meeting though she had been requested to obtain union information from him and had reported unsuccess. This the Board termed a discharge of a supervisor for not committing an unfair labor practice.

The continual insistence of the company upon her husband to relinquish his union preference, and the fruitless requests that she get from him the names of those attending the union gatherings, considered in the light of her prior excellent record, we cannot say do not fairly sustain the view of the Board. Her discharge, the Board felt, had the effect of interfering with and restraining the unionists in their membership by frightening them with reproof of a supervisor for not reporting on union activity. See N. L. R. B. v. Talladega Cotton Factory, Inc., 213 F.2d 209, 40 A.L.R.2d 404 (5 Cir. 1954).

■ IV. When it cannot be said that upon the whole record factual findings of the Board, as in the respects herein noted, are not substantially grounded in the evidence, we must uphold them. Moreover, when its orders do not go beyond its findings and are appropriate to the correction of violations we enforce the orders. This we do instantly save in the aspects hereinafter mentioned.

As to Louise Moore, reinstatement was ordered of her to her former or a substantialy equivalent position, without prejudice to her incidental employment rights and with pecuniary recompense to her. Because of the difficulty created by her conflict-of-interest position we think the Board was not well advised to order her reinstatement. But equitably she is entitled to payment of wages (less amounts she earned or fairly could have earned elsewhere in the period) for a reasonable time after her discharge because the Company was aware of the conflict throughout her tenure. A reason-

able time would, we think, be from the expiration of her two-week discharge period until the date of our decision herein —that is, from October 31, 1960 to the date of the judgment order on this appeal. The notice ordered posted will be amended accordingly.

The cease and desist orders will not be enforced insofar as they refer to surveillance of union meetings and to advice on the return of union cards, since these incidents have not been upheld as unlawful conduct by the company. The notices to be posted will be changed to conform to these modifications of the Board's order.

Orders enforced except as noted in this opinion.