**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SILVER BAY LOCAL UNION NO. 962, INTERNATIONAL BROTHERHOOD OF PULP, SULPHITE & PAPER MILL WORKERS, AFL–CIO, Respondent.**

No. 73–1037.

United States Court of Appeals, Ninth Circuit.

May 22, 1974.

Stanley Zirkin (argued), Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Charles M. Henderson, Director, NLRB, Seattle, Wash., for petitioner.

Lawrence Schwerin (argued), of Donaldson, Hafer, Cassidy & Price, Seattle, Wash., for respondent.

Before KOELSCH, CARTER and WRIGHT, Circuit Judges.

OPINION

EUGENE A. WRIGHT, Circuit Judge:

The National Labor Relations Board petitions to enforce its order finding that the respondent union violated § 8(b)(1)(B) of the National Labor Rela-

tions Act [29 U.S.C. § 158(b)(1)(B)]. The Board ordered the union to cease and desist from its unlawful conduct, to post appropriate notices, and to pay back pay to a supervisor terminated as a result of the union's conduct.

We are concerned with two issues on appeal: (1) whether substantial evidence on the record as a whole supports the Board's finding that the union violated § 8(b)(1)(B) by using the threat of a strike to restrain or coerce an employer in the selection of its "representative for the purposes of collective bargaining or the adjustment of grievances"; and (2) whether the NLRA authorizes an order awarding back pay to a supervisor for a purpose other than to protect the rights of employees. We remand on the issue of back pay but order enforcement of the remainder of the order.

## I

■ The dispute arose in the plant of the Alaska Lumber & Pulp Co. at Sitka, Alaska, the employer of more than 200 men. Earl Niesen had been a member of the company's general work force and the respondent union for more than six years. In late June 1970 the company, hoping to solve problems of excessive absenteeism, tardiness, and poor job performance, appointed Niesen supervisor of the woodroom. Niesen was selected over several foremen senior to him. Prior to his promotion he was active in the union and held the position of Standing Committee Chairman. Upon his new appointment, he resigned from the union and began a break-in period of two weeks before commencing his new duties as supervisor.

Responding to management's encouragement, Niesen met with employees and indicated he would strictly enforce the provisions of the collective bargaining agreement with respect to absenteeism, tardiness, and job performance. The record before us indicates he succeeded in significantly improving production in the woodroom over a period of months.

Shortly after Niesen announced his intent to "crack down," a grievance was filed against him charging misapplication of the seniority rules and harassment of the employees. The grievance was discussed at a meeting of the union-management committee. The company defended Niesen's attempts to achieve efficient production, but indicated concern with what might be' poor methods on Niesen's part to achieve this goal. It said the complaints would be handled pursuant to the contract.

Approximately six months later another employee filed a grievance against Niesen, claiming that Niesen pushed him during a dispute in the latter's office. Another meeting of the union-management committee was convened, and the union indicated that it wanted Niesen relieved of his duties as supervisor. The company responded in writing that the dispute had become serious enough to escalate the grievance to the next step in the adjustment of complaints.

The next day, a petition was circulated calling for a "Strike vote Earl Niesen woodroom case." A strike vote, not sanctioned by the International Union, was conducted at two special meetings of union members. The union representative told the 210 men in attendance that a strike vote would be taken in order to demonstrate to the company that the entire work force was supporting the union leadership in the Niesen matter. The representative discounted the likelihood of a strike actually occurring. The employees voted to strike, 178 to 29.

At a union-management meeting the company expressed concern that a strike was imminent, and it offered to train Niesen for one week and to put an overseer in with him. The union rejected this offer. The next day the union documented off-job incidents of violent conduct by Niesen. The company responded with a proposal to have Niesen act only through foremen, thereby avoiding all direct contact with employees "until conditions return to normal." The un-

ion rejected this because they did not want Niesen "anywhere near our people" and because the proposal was unilateral in nature. Negotiations broke down and the company advised the International Union representative that it would accede to the union's request to discharge Niesen because the company could not "take a strike." Niesen was then terminated.

The Board concluded that the union violated § 8(b)(1)(B) by demanding upon threat of a strike that Niesen be removed from his supervisory position. The union claims the strike vote was only a "show of strength," and that it wanted Niesen terminated only because of his propensity for violence. There is substantial evidence in the record as a whole, however, to support the administrative law judge's findings, adopted by the Board, that the fear of strike did in fact coerce the company's decision to terminate Niesen, and that it was Niesen's vigorous enforcement of work rules, rather than his propensity for violence, that prompted the union's conduct.

## II

To remedy the results of this unlawful conduct, the Board issued a cease and desist order, ordered the union to post notices stating that it had no objection to Niesen's employment as supervisor, and ordered the union to make Niesen whole for any loss of earnings. The union argues vigorously that the back pay award should be stricken, claiming that it is "unauthorized, inappropriate and unprecedented." The Board responds that the award is valid and proper under § 10(c) of the Act, 29 U.S.C. § 160(c), which empowers the Board, upon finding that an unfair labor practice has been committed,

> . . . to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: *Provided,* That where an order directs reinstatement of an employee, back pay may be required of

the employer or labor organization, as the case may be, responsible for the discrimination suffered by him. . . .

It has long been recognized that supervisors are not entitled to the protection afforded "ordinary employees" under the Act, and that "as to supervisors there can be no such thing as a discriminatory discharge or an unfair labor practice." NLRB v. Fullerton Publishing Co., 283 F.2d 545, 551 (9th Cir. 1960); *see* 29 U.S.C. § 152(3); NLRB v. Bell Aerospace Co., 416 U.S. 267, 274 n. 4, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974).

Despite the exclusion of supervisors from the Act's protection, courts have on several occasions upheld Board awards of back pay to supervisors as appropriate remedial relief under § 10(c). Each of the cases we have been able to find, however, seems predicated on the determination that such relief is necessary to protect the rights of *employees.* For example, courts have upheld Board orders directing reinstatement with back pay to supervisors who were disciplined for refusing to engage in unfair labor practices. Such relief has been deemed proper where it has been found that a supervisor's discharge "interferes with, restrains and coerces the rights of ordinary employees in violation of Section 8(a)(1) of the Act." NLRB v. Talladega Cotton Factory, 213 F.2d 209, 217 (5th Cir. 1954); NLRB v. Brookside Industries, Inc., 308 F.2d 224, 228 (4th Cir. 1962).

Similarly, courts have upheld Board awards of back pay to supervisors who were disciplined because they testified adversely to the employer in Board proceedings. This relief has not been given because of the supervisor's support of a union, since such conduct by supervisors is not protected. Rather, it has been defended as necessary to an employee's right to vindication through effective administrative proceedings, "and a witness' fear of reprisal is incompatible with that effective administration." NLRB v. Electro Motive Manufacturing Co., 389 F.2d 61, 62 (4th Cir. 1968);

NLRB v. Southland Paint Co., 394 F.2d 717, 720 (5th Cir. 1968). The failure to protect supervisors who are discharged for testifying at a Board proceeding would tend

> . . . to dry up legitimate sources of information to Board agents, to impair the functioning of the machinery provided for the vindication of the employees' rights and, probably, to restrain employees in the exercise of their protected rights.

NLRB v. Electro Motive Manufacturing Co., *supra.*

The present case, involving a violation of § 8(b)(1)(B), is concerned with vindicating the rights of employers, not employees. The usual remedy in such a case is a cease and desist order and the posting of a notice by the union. The Developing Labor Law 859 (C. Morris ed. 1971). We have not found one case or Board decision in which a supervisor was awarded back pay as a result of an 8(b)(1)(B) violation. Thus the order before us appears to be a departure from a consistently followed Board policy of not making such awards.

It is not clear that the Board fully considered this apparent departure from its prior decisions. In affirming without opinion the decision of the administrative law judge, the Board failed even to mention the issue of back pay. Moreover, the judge's decision made no effort to justify this seemingly unprecedented relief.

This situation is similar to that in NLRB v. International Union of Operating Engineers, Local 925, 460 F.2d 589 (5th Cir. 1972). There the Fifth Circuit considered a case where the Board affirmed without opinion a decision of the trial examiner that assessed personal liability for back pay against a union of-

ficial. As here, that ruling appeared to be a departure from Board policy and, again as here, the Board proffered no explanation for the result until it finally defended it in briefs at the appellate level. The Fifth Circuit Concluded, as do we here, that the issue should be remanded to the Board for further consideration.

■ The Supreme Court has recently made clear that the Board may announce new principles in an adjudicative proceeding. NLRB v. Bell Aerospace Co., 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). We agree with the Fifth Circuit, however, that "[n]evertheless, the Board may not depart, sub silentio, from its usual rules of decision to reach a different, unexplained result in a single case." NLRB v. International Union of Operating Engineers, Local 925, *supra* at 604.

■ Therefore, without reaching the question of whether the Board has exceeded its statutory authority, we vacate that portion of the Board's order awarding back pay to supervisor Niesen and remand to the Board for further proceedings.

> If the ruling was inadvertent, the matter will stop there. If the Board is still of the opinion that [Niesen is entitled to back pay], the facts which distinguished this case from the Board's prior decisions should be articulated. If this case represents a change in Board policy, the new policy should be explicated. Only then can this court properly consider respondents' contention that the Board has exceeded its statutory authority.

NLRB v. International Union of Operating Engineers, Local 925, *supra* at 605.

Enforced in part, remanded in part.