**CATALINA YACHTS, INC., Appellant,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Appellee.**

**No. CV 99–07357 GHKVAPX.**

United States District Court, C.D. California.

Feb. 18, 2000.

Zachary R. Walton, James L. Meeder, Robert D. Wyatt, Beveridge & Diamond, San Francisco, CA, for Appellant.

Lois J. Schiffer, Assist. Atty. General, Norman L. Rave, Jr., Environmental Defense Section, Environment and natural Resources Div., Washington, DC, for Appellee.

## MEMORANDUM AND ORDER

KING, District Judge.

This matter comes before the court on appeal from the United States Environmental Protection Agency's ("EPA") Environmental Appeals Board ("EAB") decision of *In re Catalina Yachts, Inc.*, 29 Envtl. L. Rep. 41093 (EPCRA Appeal, March 24, 1999). The court has fully considered the briefs and papers pertaining to this matter. This motion is appropriate for decision without oral argument. *See* Fed. R.Civ.P. 78; Local Rule 7.11. We rule as follows:

## I. BACKGROUND

Appellant Catalina Yachts, Inc. ("Catalina") is a California corporation which manufactures recreational sail boats. On June 20, 1994, the EPA, Region 9, filed an administrative complaint against Catalina seeking $175,000 in civil penalties for Catalina's failure to timely file seven "Form Rs" with the EPA for its use of styrene and acetone. Section 313 of the Emergency Planning and Community Right–to–Know Act ("EPCRA"), 42 U.S.C. § 11023, requires facilities that manufacture, process, or otherwise use certain chemicals in quantities exceeding the established thresholds to submit a Toxic Chemical Release Inventory Form ("Form R") to the EPA. Catalina concedes that it did not file the required forms within the required time period.

On January 27, 1997, an EPA Administrative Law Judge ("ALJ") assessed a penalty of $39,792 against Catalina. This penalty was assessed by taking the EPA's requested amount and reducing it by various factors.

The EPA and Catalina appealed the ALJ's decision to the EAB. The EAB reviewed the ALJ's determination and concluded, on March 24, 1999, that a $69,000 adjustment, as a factor of Catalina's environmentally beneficial measures, was improper, and assessed a final penalty of $108,792 against Catalina (the ALJ's decision was affirmed in every other regard). Catalina, following dismissal of its motion for reconsideration, appeals from the EAB's final decision. We have jurisdiction pursuant to 42 U.S.C. § 11045(f)(1).

## II. STANDARD OF REVIEW

■ EPCRA provides that, "[a]ny person against whom a civil penalty is assessed under this section may obtain review thereof in the appropriate district court of the United States ...." 42 U.S.C. § 11045(f)(1). However, EPCRA does not specify the appropriate standard of review. Accordingly, we look to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq. *See Hopi Tribe v. Navajo Tribe,* 46 F.3d 908, 914 (9th Cir.1995). Under the APA, we review the EAB's decision to determine whether it was, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This standard of review "is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

■ Moreover, insofar as this matter concerns the EPA's authority to establish sanctions, this determination is a "matter of agency policy and discretion." *Robinson v. United States,* 718 F.2d 336, 339 (10th Cir.1983). Accordingly, we may not overturn the EPA's choice of sanction unless it is unwarranted in law or unjustified in fact. *Spencer Livestock Comm'n v. Department of Agric.,* 841 F.2d 1451, 1456 (9th Cir.1988) (citing *Butz v. Glover Livestock Comm'n Co., Inc.,* 411 U.S. 182, 185–86, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); *Blackfoot Livestock Comm'n v. Department of Agric.,* 810 F.2d 916, 922 (9th Cir.1987)).

## III. THE EPCRA FRAMEWORK

The parties have limited this appeal to the propriety of the EAB's penalty assessment under EPCRA with respect to Catalina's claimed right to have its environmentally beneficial measures considered as an offset of its assessed penalty. EPCRA section 325 provides that (for reporting violations), "[a]ny person (other than a government entity) who violates any requirement of section 11022 or 11023 of this title shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation." 42 U.S.C. § 11045(c)(1). No more guidance is provided under this subsection as to how to fashion an appropriate penalty.

Lacking statutory directives regarding the assessment of EPCRA reporting violation penalties, the EPA has adopted, as

guidance, the penalty assessment factors set forth in 15 U.S.C. § 2615(a)(2)(B). This statute provides:

> In determining the amount of a civil penalty, the Administrator shall take into account the nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability to pay, effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require.

*Id.* The EPA has also adopted its own penalty assessment methodology under the Enforcement Response Policy ("ERP"), based on the penalty factors applicable to other violations of EPCRA. The ERP establishes a two-step process for calculating penalties: first, a gravity based penalty is established reflecting the characteristics of the violation (utilizing a penalty matrix); second, the gravity based penalty is adjusted upwards or downwards, taking into account factors related to the violator (e.g. voluntary disclosure of the violation, prior violation history, whether the chemical has been de-listed subsequent to the violation, the violator's attitude, ability to pay, and other matters as justice may require). With respect to the "other matters" factor, the ERP states, "the Agency will consider other issues that might arise, on a case-by-case basis, and at Regional discretion, which should be considered in assessing penalties." ERP at 18. However, "[u]se of this reduction is expected to be rare and the circumstances justifying its use must be thoroughly documented in the case file." *Id.*

Procedurally, EPA's assessment of an administrative penalty is governed by the Agency's Consolidated Rules of Practice, 40 C.F.R. Part 22. Under those rules, an action is initially assigned to an ALJ to render an initial decision both on liability and penalty. This initial decision may then be appealed by the parties, or may be reviewed by the EAB sua sponte, within a fixed amount of time. The EAB may as-

sess a penalty that is higher or lower than the amount recommended to be assessed by the ALJ. However, the EAB's rules of decision have held, "[w]here a penalty assessment is within the range of penalties approved by the applicable penalty policy, 'the Board will not substitute its judgment for that of the Presiding Officer absent a showing that the Presiding Officer has committed an abuse of discretion or a clear error in assessing the penalty.'" *In re Spang & Co.*, 6 E.A.D. 226, 1995 WL 646518, *13 (E.P.A.Oct. 20, 1995) (citing *In re Pacific Refining Co.*, 5 E.A.D. 607, 1994 WL 698476, EPCRA Appeal No. 94–1, Slip Op. at 8 (E.P.A.1994)).

## IV. THE EAB'S PENALTY ASSESSMENT

In its complaint, the EPA requested a $175,000 penalty against Catalina (reflecting the maximum $25,000 EPCRA penalty for Catalina's seven reporting violations). The EAB ultimately imposed a $108,792 penalty, less than the maximum allowable by law, after determining that the ALJ's assessed penalty of $39,792 was clear error.

■ Catalina argues, however, that the EAB's final penalty determination was an abuse of discretion as it refused to consider Catalina's environmentally beneficial measures under the "other matters as justice may require" rubric.

The scope of our review is not to determine whether Catalina's interpretation of the language in 15 U.S.C. § 2615, which the EAB has adopted as "policy," is the better one, but rather to determine, at most, whether EPA's reading is reasonable and consistent with the statute. *See e.g. Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.") (footnote omitted); *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 53 L.Ed.2d 48

(1977) (court is to give controlling weight to an agency's interpretation " 'unless it is plainly erroneous or inconsistent with the regulation.' ") (citing *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)). *See also National Ass'n of Regulatory Utility Comm'rs v. F.C.C.*, 746 F.2d 1492, 1502 (D.C.Cir.1984).

EPA interprets the "other matters as justice may require" language of § 2615 to mean that other factors (or at least environmentally beneficial projects) should not be considered unless the assessed penalty is otherwise manifestly unjust. We find this interpretation to be reasonable and consistent with the statute's overall purpose, especially in light of EPA's other penalty assessment declarations which indicate EPA's desire to use this factor narrowly, and only in rare circumstances.[1]

## V. DEPARTURE FROM PRECEDENT

■ A federal agency is "not absolutely bound by its prior determinations, but rather may adjust its policies and rulings in light of experience: '[c]umulative experience' begets understanding and insight by which judgments ... are validated or qualified or invalidated." *Montana Power Co. v. EPA*, 608 F.2d 334, 347 (9th Cir.1979) (citing *NLRB v. Seven–Up Bottling Co.*, 344 U.S. 344, 349, 73 S.Ct. 287, 97 L.Ed. 377 (1953)). But while an agency may announce new principles in an adjudicatory proceeding, it "may not depart, sub silentio, from its usual rules of decision to reach a different, unexplained result in a single case." *NLRB v. Silver Bay Local Union No. 962*, 498 F.2d 26, 29 (9th Cir. 1974) (citations omitted).

■ Catalina contends that the EAB abused its discretion by departing from its prior decision of *In Re Spang & Co.*, 6 E.A.D. 226, 1995 WL 646518, *13 (E.P.A. Oct.20, 1995). However, our reading of *Spang* leads us to the conclusion that, although *Spang* is subject to a certain degree of ambiguity, the EAB's determination in the present case is not an unexplained departure from *Spang*. In *Spang*, the EAB wrote:

As a matter of policy, the Agency obviously looks favorably upon the undertaking of a project which benefits the environment and which goes beyond the requirements of environmental laws. By considering such behavior in a penalty assessment proceeding the Agency can provide an incentive for companies to engage in environmentally beneficial activities. Nevertheless, sight must not be lost of the fact that initial compliance with the law is the primary objective of the Agency's enforcement efforts and that penalties play an important deterrent role in those efforts. Therefore, the amount of credit which is allowable for environmentally beneficial projects must be tempered with the knowledge that a violation has taken place. Thus, to strike the proper balance between these conflicting forces, we are of the view that the evidence of environmental good deeds must be clear and unequivocal, and the circumstances must be such that a reasonable person would easily agree that not giving some form of credit would be a manifest injustice. This formulation for giving due credit for environmental good deeds holds faith to the underlying principle of the justice factor, which is essentially to operate as

1. Catalina's argument that the EAB's interpretation has wholly read the "justice" factor out of the "controlling statutory language," (Appellant Br. at 11), is more a matter of semantics than anything else. First, this language is not part of the controlling statute, but rather is derived from another environmental statute, not presently applicable, which the EPA has adopted as guidance, and thus the EPA is entitled to greater deference in its interpretation of this language. Second,

the EAB's framework still requires consideration of the "justice" factor, however, it is simply not utilized if the assessed penalty is not otherwise unjust. Finally, Catalina is not quite correct when it asserts that the EAB failed to consider its environmentally beneficial projects at all. Despite its ruling in the case, the EAB did actually consider these projects, but was not swayed by them. *See In re Catalina Yachts, Inc.*, Slip. Op. at 23 n. 23.

a safety mechanism when necessary to prevent an injustice. It further suggests that use of the justice factor should be far from routine, since application of the other adjustment factors normally produces a penalty that is fair and just.

*Id.* at \*15. This language provides that the "justice" factor should only be applied when not giving someone credit would be a manifest injustice, and that application of this factor should be far from routine because the application of the other adjustments normally produces a penalty that is fair and just. Although the ultimate decision in *Spang* was to remand the case to the ALJ for consideration of the "justice" factor, we cannot say that the EAB's decision here was unreasonable, unsubstantiated, or anything more than a clarification, or refinement, of the standard set forth in *Spang*.[2]

Moreover, in light of the EAB's holding regarding the proper application of the "justice" factor, it was not an abuse of discretion, or contrary to law, for the EAB to have determined that the ALJ's decision was clear error. The ALJ's decision failed to consider EPA policy and the language in *Spang* discussing the restrictive use of the "justice" factor.

 Finally, as the EPA's Consolidated Rules of Practice, 40 C.F.R. Part 22, make it clear that the EAB may modify or increase penalties, we find that it was not an abuse of discretion for the EAB to assess Catalina's final penalty instead of remanding the case to the ALJ for further consideration.

## VI. DISPOSITION

The decision of the Environmental Appeals Board is **AFFIRMED.**

IT IS SO ORDERED.

---

2. Nothing in *In re Bollman Hat Co.,* 29 Envtl. L. Rep. 41083, 1999 WL 65476 (E.P.A. Feb. 11, 1999), or *In the Matter of F.C. Haab Co.,* *Inc.,* 12 EPA Envtl. L. Rep. 375, 1998 WL 422194 (E.P.A. June 30, 1998), leads us to alter our result.