**CALIFORNIA TRUCKING ASSOCIATION; National Motor Freight Traffic Association, Inc.; Central and Southern Motor Freight Tariff Association, Inc., Petitioners,**

**Regular Common Carrier Conference; Alabama Public Service Commission; Jarvis Leasing, Inc.; The Maxwell Co.; Propane Transport, Inc.; Truckway Service, Inc.; Weiss Trucking Company, Inc.; International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("IBT") and**

---

Teamsters' Joint Council No. 7 ("Local 7"); California Public Utilities Commission; The National Association of Regulatory Utility Commissioners; Ad Hoc Carriers (California), Petitioners–Intervenors,

v.

INTERSTATE COMMERCE COMMISSION; United States of America, Respondents,

Rubber Manufacturers Association, Inc. ("RMA"); National–American Wholesale Grocers' Association ("NAWGA"); Quaker Oats Company; National Small Shipments Traffic Conference, Inc.; Drug and Toilet Preparation Traffic Conference, Inc., Respondents–Intervenors.

GREAT WESTERN TRUCKING CO., INC., Petitioner,

Jarvis Leasing Inc., et al.; Merchants Fast Motor Lines; Central Freight Lines, Inc., et al.; Big State Freight Lines, Inc.; Brown Express, Inc.; Herder Truck Line, Inc.; State of Texas; Regular Common Carrier Conference, Petitioners–Intervenors,

v.

INTERSTATE COMMERCE COMMISSION; United States of America, Respondents,

The Quaker Oats Company; The Rubber Manufacturers Association; National–American Wholesale Grocers' Association; Custom Carriers; C. H. Robinson Co.; Iowa Continental Shippers, Inc., Respondents–Intervenors.

Nos. 87–7439, 88–7041.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1989.

Memorandum Filed Dec. 14, 1989.

Decided April 13, 1990.

Patrick L. McEligot, Rea, Cross & Auchincloss, Washington, D.C., for petitioners.

Evelyn Kitay, I.C.C., Washington, D.C., for respondents.

William W. Pugh, National Motor Freight Traffic Ass'n, Alexandria, Va., for petitioners-intervenors.

William P. Jackson, Jr., Jackson & Jessup, Arlington, Va., for respondents-intervenors.

Before NELSON, TROTT and RYMER, Circuit Judges.

## ORDER

The motion for publication in this case is granted. The opinion filed concurrently with this order replaces the memorandum disposition filed December 14, 1989, 893 F.2d 1338, as the disposition in this case.

## OPINION

RYMER, Circuit Judge:

California Trucking Association and others petition for review of an order of the Interstate Commerce Commission declaring that shipments of Quaker Oat products within the states of Texas and California are subject to interstate rates because they are a continuation of a previous interstate shipment. Texas intervened in the ICC proceedings, where it unsuccessfully sought a stay pending determination of a state court action. Petitioners challenge the ICC's jurisdiction to determine the nature of the shipments and the sufficiency of the procedures the ICC adopted in considering the matter. They also assert that the ICC's decision deviated without explanation from prior standards and is therefore arbitrary and capricious. We deny the petition to review and set aside.

## I.

Quaker, a grocery and food product producer, has manufacturing facilities throughout the United States and uses distribution centers to facilitate movement of its products to retail customers. The centers involved in this dispute are in Fullerton, California and Dallas, Texas. Quaker's computerized inventory system allows

it to track each product through the distribution center to the customer. While the shipments at issue in this proceeding are not pursuant to specific orders, Quaker's customers are mainly chain stores with predictable demands. Less than one percent of its shipments end up in the hands of an unexpected customer or outlet.

Quaker previously transported goods under "storage in transit" provisions of an ICC tariff. Presently its products are shipped to the center on bills of lading which state that the goods are for storage in transit, to be held for reshipment to customers. Some also note: "This is a continuation of an interstate shipment."

In August 1987, the ICC declared that the movements involved are part of continuous interstate transportation. *The Quaker Oats Company,* No. MC–C–30006, slip op. (I.C.C. Aug. 10, 1987). After petitions to reopen were filed, the ICC affirmed its prior decision.

## II.

■ The court may set aside an agency's order only if its findings or conclusions are arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right or unsupported by substantial evidence. 5 U.S.C. § 706(2)(A); *Gray Lines Tour Co. v. Interstate Commerce Comm'n,* 824 F.2d 811, 813 (9th Cir.1987); *Funbus Sys. v. California Pub. Util. Comm'n,* 801 F.2d 1120, 1125 (9th Cir. 1986); *Lodi Truck Serv. v. United States,* 706 F.2d 898, 900 (9th Cir.1983).

## III.

■ Petitioners contend that the ICC lacked jurisdiction to issue the declaratory order Quaker sought, because the transportation in this case was facially intrastate. However, the ICC has primary authority to interpret the certificates it issues to interstate shippers. *Service Storage & Transfer Co. v. Virginia,* 359 U.S. 171, 177–78, 79 S.Ct. 714, 718–19, 3 L.Ed.2d 717 (1959); *see, e.g., Middlewest Motor Freight Bureau v. Interstate Commerce Comm'n,* 867 F.2d 458, 460 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 234, 107 L.Ed.2d 185 (1989); *Texas v. United States,* 866 F.2d 1546, 1552 (5th Cir.1989). If the ICC mistakenly treats an intrastate matter as interstate commerce, the defect is substantive rather than jurisdictional. *See Texas v. United States,* 866 F.2d at 1553; *Gray Lines Tour,* 824 F.2d at 815; *Southern Pac. Trans. Co. v. Interstate Commerce Comm'n,* 565 F.2d 615 (9th Cir.1977); *see also Pennsylvania Pub. Util. Comm'n v. United States,* 812 F.2d 8, 11 (D.C.Cir. 1987). Clearly, to exercise its statutory authority over interstate commerce, the ICC must have, in the first instance, the authority to determine what is interstate commerce. It correctly exercised jurisdiction in this proceeding.

## IV.

■ Texas also argues that the ICC erred by not affording it the opportunity for discovery and an oral hearing. The procedures followed by the ICC permitted all interested parties to file comments and participate in the fact-finding process. Under these circumstances the ICC was not required to hold a full oral hearing and give the participants the opportunity to conduct discovery. *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 543, 98 S.Ct. 1197, 1211, 55 L.Ed.2d 460 (1978); *Pacific Gas & Elec. v. Federal Energy Regulatory Comm'n,* 746 F.2d 1383, 1386 (9th Cir.1984); *American Transfer and Storage v. Interstate Commerce Comm'n,* 719 F.2d 1283, 1301 (5th Cir.1983).

## V.

■ The heart of petitioners' disagreement with the ICC order lies in their contention that the ICC's opinion is not consistent with controlling precedent. They contend that in cases involving out-of-state shipper warehousing and distribution operations, the ICC and the courts have employed a three-part test to determine the essential nature of the commerce. *Ex Parte No. MC–48, Determination of Juris-*

*diction Over Transportation of Petroleum and Petroleum Products Within a Single State,* 71 M.C.C. 17 (1957) (major manifestations of shipper's intent found in: (1) absence of specific order being filled for specific quantity at the time of shipment; (2) the terminal storage is a distribution point or local marketing facility; and (3) the further transportation is arranged only after sale or allocation from storage). *See also Baird v. Wagoner Trans. Co.,* 425 F.2d 407 (6th Cir.1970), *cert. denied,* 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); *Wirtz v. Lunsford,* 404 F.2d 693 (6th Cir. 1968); *Galbreath v. Gulf Oil Corporation,* 413 F.2d 941 (5th Cir.1969). Petitioners urge that abandoning this standard was unreasonable as a matter of law, but that in any event, failing to apply or explain it in this case was arbitrary and capricious. The ICC argues that its decisions are entitled to considerable deference, and that it did apply established standards for determining whether transportation is interstate.

■ The ICC correctly applied the "fixed and persistent intent" rule to determine the essential nature of commerce. It went on, however, to ascertain Quaker's intent "from all the facts and circumstances surrounding the transportation." *Quaker Oats,* slip op. at 8 (quoting *Armstrong World Indus., Inc.,* 2 I.C.C.2d 63, 69 (1986), *aff'd sub nom Texas v. United States,* 866 F.2d 1546 (5th Cir.1989)).

The opinion relies on recent decisions in *Armstrong,* 2 I.C.C.2d 63, and *Matlack, Inc.,* No. MC–C–10999, slip op. (I.C.C. June 1, 1987), *aff'd sub nom Middlewest Motor Freight Bureau v. I.C.C.,* 867 F.2d 458 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 234, 107 L.Ed.2d 185 (1989), which generally applied a similar standard, and purports to distinguish other cases such as *Atlantic Coast Line Ry. Co. v. Standard Oil Co. of Ky.,* 275 U.S. 257, 48 S.Ct. 107, 72 L.Ed. 270 (1927), *Southern Pac. Trans. Co. v. Interstate Commerce Comm'n,* 565 F.2d 615 (9th Cir.1978), and *Surles Contract Carrier Application,* 4 M.C.C. 488 (1938), which are factually similar to the Quaker situation but resulted in different findings.

Significantly, however, the opinion neither attempts to distinguish nor does it apply the three-part test of *Ex Parte No. MC–48.* Had it done so, the absence of specific orders in this case would arguably have compelled an order in favor of the ICC.

■ Federal agencies have the power to "adjust ... policies and rulings in light of experience." *Montana Power Co. v. Environmental Protection Agency,* 608 F.2d 334, 347 (9th Cir.1979). But while an agency may announce new principles in an adjudicatory proceeding, it "may not depart, sub silentio, from its usual rules of decision to reach a different, unexplained result in a single case." *NLRB v. Silver Bay Local Union No. 962,* 498 F.2d 26, 29 (9th Cir. 1974) (citing *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974), and *NLRB v. International Union of Operating Engineers, Local 925,* 460 F.2d 589, 604 (5th Cir.1972)). *Accord Atchison, Topeka & Santa Fe Ry Co. v. Wichita Board of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973).

The issue, therefore, is whether the ICC departed from its precedent without sufficiently explaining its decision. The agency appears to have recharacterized the applicable test in *Armstrong,* 2 I.C.C.2d at 69, and reasserted it in *Matlack,* slip op. at 4–5, as follows: "There is no set formula to apply [in ascertaining intent].... The question of whether goods come to rest in a warehouse or other storage facility must be decided on a case-by-case basis. Different factors may be important in certain types of cases, but may or may not be present or identified in others." *Matlack,* slip op. at 4–5.

In *NLRB v. Sunnyland Packing Co.,* 557 F.2d 1157, 1160–61 (5th Cir.1977), the Fifth Circuit found that one contrary precedent does not justify reversal of an agency decision where the most recent line of authority is consistent. *Accord Montana Power Co. v. Environmental Protection Agency,* 608 F.2d 334, 338 and n. 27 (9th Cir.1979). *See also* K. Davis, 4 Administrative Law Treatise § 20.11 (2d ed. 1983) ("If half a dozen of the agency's precedents go

each way, probably the agency may cite the latest precedent and follow it.").

Even though the ICC has never explicitly stated that it was abandoning the more structured *Ex Parte No. MC–48* test, it appears that its use of that standard has been refined, if not phased out. A clear statement at some point would have aided the courts, and the parties, in determining whether this order was indeed a departure from controlling precedent. Nevertheless, given *Armstrong* and *Matlack*, the ICC need not continue to explain it away. The standard adopted in *Armstrong* and *Matlack*, and applied in this case, is not unreasonable, or plainly inconsistent with the rationale of other cases. *See, e.g., Long Beach Banana Distributors v. Atchison, Topeka & Santa Fe Railway Company*, 407 F.2d 1173, 1175 (9th Cir.), *cert. denied*, 396 U.S. 819, 90 S.Ct. 56, 24 L.Ed.2d 70 (1969) (intrastate leg of trip begun out-of-state was in interstate commerce even though ultimate destination was not known at time of original shipment). Because the ICC is the agency invested with responsibility for making determinations about the essential nature of commerce and should have some latitude in evolving standards that keep up with the times, we do not find that its decision is arbitrary or capricious.

Accordingly, the petitions to review and set aside are DENIED.