16 F.3d 417
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Sandra Clark Martin BRAGGS, Defendant-Appellant.
 No. 93-6259.
 United States Court of Appeals, Tenth Circuit.
 Feb. 10, 1994.
 
 ORDER AND JUDGMENT[1]
 Before ANDERSON, HOLLOWAY, and KELLY, Circuit Judges.
 
 
 1
 On May 7, 1993, Sandra Clark Martin Braggs pled guilty to misprision of a felony, in violation of 18 U.S.C. 4.[2] Defendant's total offense level was determined to be 14 and her Guidelines' range was determined to be 15 to 21 months. The defendant filed a motion for a downward departure.[3] At the sentencing hearing, the district court denied defendant's motion and sentenced her to 15 months' incarceration to be followed by one year of supervised release, and a $50.00 special assessment.
 
 
 2
 Defendant appeals the sentence, challenging the district court's denial of her motion for a downward departure. We dismiss the appeal.
 
 
 3
 * On March 10, 1993, the Oklahoma City Police department in cooperation with the Federal Bureau of Investigation arranged for an informant to purchase cocaine from defendant's common-law husband, James Rudolph Braggs, at the Braggs' residence. Upon completion of the drug transaction, which took place while defendant was at home, officers from the Oklahoma City Police Department obtained a search warrant to search the Braggs' residence. This warrant was executed the same day as the drug transaction, March 10, 1993. The search yielded 24.92 grams of cocaine and 4.87 grams of marijuana. Additionally, the officers found a digital scale located in the Braggs' bedroom and a hot plate in the Braggs' bathroom. Residue found on the hot plate tested positive for cocaine.
 
 
 4
 Contemporaneously with the search of the Braggs' residence, the Braggs were handcuffed and seated at their dining room table. The defendant's affidavit states that James Braggs handed her a packet which she slipped into her bra.[4] Subsequently, Mr. Braggs had a change of heart and decided to cooperate with the police at the scene. Accordingly, he informed the police, inter alia, that defendant was hiding cocaine that he gave her in her bra. Both Braggs were subsequently placed under arrest.
 
 
 5
 Defendant Sandra Braggs ultimately pled guilty to misprision of a felony. At her sentencing defendant requested a downward departure and an award of probation, arguing that: (1) she was a first-time offender whose behavior was purely aberrational; (2) she is the mother of and provider for two small children and cares for five other step-children; and (3) she had no knowledge of her husband's criminal behavior prior to the drug raid. In support of her claim that she was unaware of James Braggs' illicit activities, defendant testified at her sentencing hearing that she worked seven days a week, approximately eight hours a day, and was thus frequently absent from the Braggs' residence.
 
 
 6
 In response to defendant's evidence, and in opposition to the motion for downward departure, the government presented evidence raising questions as to defendant's credibility and suggesting that defendant may have indeed had knowledge of Mr. Braggs' drug-trafficking activities. For example, evidence was introduced that defendant was at home during the drug transaction with the informant, and that a digital scale was found in the Braggs' bedroom. In addition, a hot plate, with traces of cocaine on it, was found on a counter in a bathroom adjacent to the Braggs' bedroom.[5] Moreover, defendant's social worker testified that defendant told her that she worked only 10 to 15 hours per week, thus suggesting, if true, that defendant may have been at home more often than she testified, and thus increasing the likelihood that she was aware of her husband's illicit activities and casting doubt on the aberrational nature of her act.
 
 
 7
 After hearing the evidence, the district court declined to depart from the Sentencing Guidelines, stating:
 
 
 8
 Grounds for a departure from the guidelines are rather straightforward and do require a certain amount of quantity and quality of factual justification for making a departure from what is otherwise required of the sentencing courts. Despite the obvious sincerity and earnestness of defense counsel, something that doesn't surprise me and which I admire and appreciate, as a matter of law, under these facts, there is simply no basis for granting the motion for downward departure. The facts are to the contrary, and the facts very strongly support the plea of guilty that Ms. Braggs has made with regard to her knowledge of these matters and her failure to report it.
 
 
 9
 The greater concern from this particular hearing is whether or not she, in an effort to support her motion for downward departure and affect the guidelines to be applied in her case, has failed to tell the truth. But her motion for downward departure is without sufficient support and is denied, and the guideline range, as prescribed by the sentencing guidelines, will remain, and it will be within that range of punishment that the Court will need to make a final decision in her case.
 
 
 10
 (Sent. Tr. at 62).
 
 
 11
 Accordingly, the district court sentenced defendant, inter alia, to 15 months' imprisonment. Defendant argues that the district court erroneously concluded it had no power to depart downward under the Guidelines, (Brief of Appellant at 9), and that "the district court erred in finding no basis exists under the Sentencing Guidelines to sustain Ms. Braggs Motion for Downward Departure", id. at 1.
 
 II
 
 12
 There is a suggestion of ambiguity in the district court's sentencing remarks here, quoted above. As we recently discussed in United States v. Haggerty, 4 F.3d 901, 904 (10th Cir.1993), it is important that sentencing courts should be precise in making sentencing comments.[6] We explained that:
 
 
 13
 If the sentencing court meant the facts of this case did not warrant a downward departure, then the court's discretionary refusal to depart downward is not appealable.... If, however, the court meant that it did not have the authority to depart under the Sentencing Guidelines, then [defendant's] claim involves a legal issue which is reviewable by this court.
 
 
 14
 Id. at 902-903 (citations omitted). "If the district court refused to depart because it erroneously interpreted the Guidelines as depriving it of the power to depart based on the proffered circumstances, then our review would be plenary." United States v. Barrera-Barron, 996 F.2d 244, 245 (10th Cir.1993).
 
 
 15
 Where, however, the sentencing court does in fact elect to depart form the Guidelines, we review such departure under a three-step analysis:
 
 
 16
 First, we determine whether the circumstances cited by the district court justify a departure from the [G]uidelines.... Our review of this issue is plenary.... Second, we review any factual determinations made by the district court to determine whether they are 'clearly erroneous.'... Third, if a departure is justified, we review the degree of departure to determine if it is reasonable.
 
 
 17
 United States v. Pena, 930 F.2d 1486, 1494 (10th Cir.1991) (citations omitted) (emphasis in original).
 
 III
 
 18
 Defendant argues that her case is analogous to our decision in United States v. Pena, 930 F.2d at 1486. In Pena we affirmed a district court's decision to depart downward from the Guidelines where the court concluded, inter alia, that: (1) defendant Pena's behavior was aberrational; (2) Pena had a long-term employment history; (3) three children depended on Pena for economic support; and (4) Pena had no prior involvement with illegal substances. We held that Pena's "[family] responsibilities, combined with the aberrational nature of Pena's conduct, justified the departure to a term of probation." Id. at 1495.
 
 
 19
 While there is some arguable similarity here to Pena, the case before us is distinguishable from Pena in that the sentencing court in Pena elected to depart from the Guidelines in sentencing defendant Pena, while the sentencing judge in this case did not elect to depart from the Guidelines in sentencing defendant Braggs. Accordingly, in Pena it was incumbent upon us to review the district court's decision to depart from the Guidelines and the degree of departure, whereas here we must determine the potentially dispositive issue of whether the district court believed that it was without the discretion to depart from the Guidelines given the facts before it or, alternatively, whether it believed it had the discretion to depart from the Guidelines and simply declined to depart given the facts before it.
 
 
 20
 We are mindful that "[t]he reasoning behind a court's departure decision should be clearly stated." United States v. Lowden, 900 F.2d 212, 217 (10th Cir.), appeal decided by, 905 F.2d 1448 (10th Cir.), cert. denied, 498 U.S. 876 (1990). "[W]e will not speculate as to what those considerations may have been." United States v. White, 893 F.2d 276, 278 (10th Cir.1990). "Without particularization by the trial court of its reasons ..., this court cannot engage in ... meaningful review...." United States v. Smith, 888 F.2d 720, 724 (10th Cir.1989), cert. denied, 494 U.S. 1068 (1990).
 
 
 21
 While the sentencing court's remarks carry some suggestion of ambiguity, they are sufficiently particularized that we need not engage in speculation to discern their meaning. We are convinced that the sentencing judge simply declined to exercise his discretion to depart downward because he concluded that there was no factual justification for a downward departure. It is true that the judge said that "as a matter of law, under these facts, there is simply no basis for granting the motion for downward departure." (Sent. Tr. at 62). However, we do not feel the judge thereby concluded that he was without authority under the circumstances to depart. He continued with a factual analysis, saying in part: "The facts are to the contrary, and the facts very strongly support the plea of guilty that Ms. Braggs has made with regard to her knowledge of these matters and her failure to report it .... [H]er motion for downward departure is without sufficient support and is denied...." Id. (emphasis added).[7]
 
 
 22
 We hold that the judge's order shows he was not persuaded that the evidence proffered by defendant supported her motion for a downward departure and, accordingly, denied this motion. Consequently, we have no jurisdiction to review this discretionary determination, see 18 U.S.C. 3742, and DISMISS the appeal.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 18 U.S.C. 4 states:
 Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.
 Originally this defendant and her common-law husband were charged in an indictment of several counts. Subsequently, defendant Sandra Braggs pled guilty to a one-count superseding information charging misprision of a felony.
 
 
 [3]
 The Sentencing Guidelines authorize a sentencing judge to depart from the Guidelines if "the court finds that there exists [a] ... mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission...." 18 U.S.C. 3553(b); U.S.S.G. 5K2.0, p.s. (1993)
 
 
 [4]
 The presentence report states:
 The defendant was searched and cocaine was found hidden in her bra. The defendant had 24 grams of powder cocaine in a plastic baggie, .7 grams of powder cocaine in a paper bindle, and 5.7 grams of cocaine base.
 
 
 [5]
 It should also be noted that evidence was introduced that the hot plate was used to "rock up" the cocaine (i.e., to turn it to crack cocaine)
 
 
 [6]
 In Haggerty, the sentencing court declined to grant a downward departure, stating: "I understand the sincerity with which you urge your position. I do not think the Court has the latitude under the guidelines to grant a downward departure and I'm not totally convinced that it would be appropriate in any event." Recognizing the apparent ambiguity of these remarks, the district court entered an order of clarification stating that it had previously intended to find that it was without the authority under the Guidelines to grant a downward departure to Haggerty under the circumstances. Accordingly, the issue before us on review was whether the sentencing court possessed the authority under the Guidelines to grant a downward departure to Haggerty under the circumstances
 
 
 [7]
 In ruling on objections to portions of the PSR, the judge also stated:
 There is a factual basis for the contents of the presentence report ... and the computations on which they are based.
 Her husband, an admitted drug dealer, said this defendant was aware of his drug dealing; they lived together as husband and wife in the same house where drugs deals were made;
 This defendant was present during a drug buy and actually was heard over a recording of the transaction, though I understand her present testimony in regard to her participation in that conversation;
 The search of the house revealed drugs and drug paraphernalia found in the house, particularly in her master bedroom, which she and the defendant occupied, including a hot plate on which there was cocaine in plain view visible and which the husband of this defendant admittedly used to cook up cocaine[.]
 (Sent. Trn. at 39-40).