WESTERN STATES PETROLEUM AS-SOCIATION; Northwest Pulp & Paper Association; Aluminum Company of America; Columbia Aluminum Corporation; Intalco Aluminum Corporation; Kaiser Aluminum & Chemical Corporation; Vanalco, Inc., Petitioners,

State of Washington Department of Ecology, Intervenor,

v.

ENVIRONMENTAL PROTECTION AGENCY; Carol M. Browner, Administrator, Respondents.

No. 95–70034.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 1996.

Decided June 17, 1996.

Matthew Cohen and Leonard J. Feldman, Heller, Ehrman, White & McAuliffe, Seattle, Washington, for petitioners.

Mary Sue Wilson, Assistant Attorney General, Olympia, Washington, for intervenor.

Daniel M. Flores, United States Department of Justice, Environmental & Natural Resources Division, Washington, DC, for respondents.

Before: WRIGHT, PREGERSON, and TASHIMA, Circuit Judges.

TASHIMA, Circuit Judge:

Title V of the 1990 Clean Air Act Amendments (Title V), 42 U.S.C. §§ 7601, *et. seq.*, established a new operating permit program to be administered pursuant to rules developed by the states and approved by the Environmental Protection Agency (EPA). The State of Washington submitted for EPA approval a Title V program that would exempt "insignificant emissions units" (IEUs) from permit application requirements, as well as monitoring, reporting and record-keeping requirements. The EPA granted only interim approval to Washington's program and conditioned final approval on the repeal of the IEU exemption. We reverse the EPA's decision as an abuse of discretion because it conflicts substantially with numerous EPA decisions in other states and localities.

*BACKGROUND*

Title V instituted a centralized permitting program to be administered by the states subject to EPA oversight. Through the program, all Clean Air Act substantive and procedural requirements applicable to a pollutant emitter are written in the emitter's operating permit. 42 U.S.C. §§ 7661c(a)–(c). Each permit must include inspection, entry, monitoring, compliance certification, and reporting requirements to assure compliance with the Act. *Id.*

Title V directs the EPA to prescribe procedures for determining compliance, institute requirements for permit applications, and es-tablish the minimum elements of a state permit program (including monitoring and reporting requirements). 42 U.S.C. §§ 7661a(b)(1), 7661a(b)(2), 7661c(b). 40 C.F.R. Part 70 sets forth the regulations that the EPA adopted to implement Title V. The Part 70 regulations set forth the criteria for EPA approval of state permit programs.

The EPA has allowed states to exempt insignificant activities and emissions levels from certain requirements in order to reduce the regulatory burdens on emitters. 40 C.F.R. § 70.5(c)(3). Subject to EPA approval, each state determines what activities and emissions levels may qualify as insignificant. 40 C.F.R. § 70.5(c)(3).

Pursuant to 42 U.S.C. § 7661a(d)(1), the State of Washington proposed a permit program to the EPA during November 1993. Washington's program designates a host of emissions as insignificant, *e.g.*, emissions from roof vents, vehicle exhaust from repair shops, and emissions from fire-fighting equipment. Wash.Admin.Code § 173–401–532. Washington's program exempts IEUs from the permit application requirements of 40 C.F.R. § 70.5. The program also exempts IEUs from the permit compliance requirements of 40 C.F.R. § 70.6, including monitoring, testing, reporting, record-keeping and compliance certification. Wash.Admin.Code § 173–401–530(2)(c).

On November 9, 1994, the EPA rejected Washington's IEU provisions, granting only interim approval to the program. 59 Fed. Reg. 55813 (1994). As a condition to final approval, the EPA required Washington to amend its IEU rules to disqualify any emissions unit subject to federally enforceable applicable requirements. 59 Fed.Reg. 55813, 55814, 55818. The EPA's interim approval allowed Washington to begin implementing its permit program while addressing the defects identified by the EPA. 40 C.F.R. § 70.4(e)(3).

Petitioners, five air pollutant emitters and two trade associations of pollutant emitters, filed a timely petition for judicial review on January 6, 1995.[1] The State of Washington Department of Ecology moved to intervene

---

1. The EPA's 1994 interim approval decision mandated five changes in Washington's Title V program prior to final approval. 59 Fed.Reg. 55818. Petitioners do not challenge any of the approval conditions other than the requirement of repealing the IEU rules.

in support of its program.[2]  On July 7, 1995, we granted the EPA's motion to vacate the portion of its decision that concerned IEUs and specifically retained jurisdiction of this matter.

On remand, the EPA adopted a final decision on November 15, 1995.  60 Fed.Reg. 62992, 62993 (1995).  The EPA found that Part 70 allows states to exempt IEUs from Title V permit applications (40 C.F.R. § 70.5), but not from the permit content requirements of 40 C.F.R. § 70.6.  *Id.* at 62993.  Thus, the EPA disapproved Washington's exemption of IEUs from Title V monitoring, reporting and record-keeping requirements.  Petitioners seek review of this final agency decision.

We have jurisdiction to review the EPA's final action pursuant to § 307(b)(1) of the Clean Air Act, 42 U.S.C. § 7607(b)(1), and pursuant to our July 7, 1995, order retaining jurisdiction of this appeal.

### STANDARD OF REVIEW

■  We review final administrative actions of the EPA pursuant to the Clean Air Act under the same standard as set forth in the Administrative Procedure Act.  *Abramowitz v. United States EPA,* 832 F.2d 1071, 1074 (9th Cir.1987).  We will reverse the EPA's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  42 U.S.C. § 7607(d)(9)(A); *Ober v. United States EPA,* 84 F.3d 304, 307 (9th Cir.1996).

**2.**  That motion, which was referred to this merits panel, is now granted.

**3.**  As a preliminary matter, the EPA contends that petitioners' failure to raise before the agency their current objections to EPA's decision forecloses this court's consideration of these arguments.  However, we find that petitioners did in fact call their instant objections to EPA's attention either before the case was remanded for EPA's reconsideration or during the comment period below.  Thus, petitioners' arguments are properly before us.

**4.**  *See* 59 Fed.Reg. 47019 (1994).

**5.**  *See* 60 Fed.Reg. 32603, 32604 (1995) (requiring the district to clarify that its IEU exemption does

■  Under this standard, we must give deference to the EPA's interpretation of its own regulations, if its interpretation is not unreasonable.  *Id.; Citizens for Clean Air v. United States EPA,* 959 F.2d 839, 844 (9th Cir.1992).  However, if the EPA has abused its discretion in failing to follow its own prior standards, then we need not defer to the EPA's anomalous interpretation.  *Oil, Chemical and Atomic Workers Int'l Union, Local 1–547 v. NLRB,* 842 F.2d 1141, 1143 n. 1 (9th Cir.1988).

### DISCUSSION [3]

■  The EPA asserts that Part 70 allows IEUs to be exempted from permit application requirements, but not from permit content requirements.  Section 70.5, which addresses requirements for permit applications, reads, in relevant part: "The Administrator may approve as part of a State program a list of insignificant activities and emissions levels which need not be included in permit applications."  40 C.F.R. § 70.5(c).  The EPA points out that § 70.6, which addresses permit content requirements, contains no such exemption for IEUs.

However, the EPA has identified only two Title V programs that in fact apply permitting requirements to IEUs—the Oregon [4] and San Francisco Bay Area Quality Maintenance District programs.[5]  On the other hand, the EPA has condoned the exemption of IEUs from the permit content requirements of § 70.6 in at least eight other state and local programs.  For example, the EPA has granted final, full approval to Title V programs from Ohio [6] and Knox County, Tennessee,[7] that omit IEUs entirely from

not exempt sources "from title V permitting requirements").

**6.**  *See*  Ohio  Admin.Code  § 3745–77–02(E)(1) ("[f]or major sources, the federally enforceable portion of the permit shall include all applicable requirements for all relevant emissions units at the major source ... the term "relevant emissions units" shall mean only those emissions units ... that are not insignificant activities and emissions levels."); 60 Fed.Reg. 18790, 18791 (1995) (proposing to approve Ohio's permit program as satisfying the requirements of both §§ 70.5 and 70.6); 60 Fed.Reg. 42045 (1995) (granting final full approval).

**7.**  *See* 60 Fed.Reg. 56281, 56282 (1995) (citing Knox County Air Pollution Control § 25.70.12 as providing "for the exemption of certain emissions units, or pollutant-emitting activities from

permits. The EPA has also proposed to approve the programs of Jefferson County, Kentucky[8] and Massachusetts,[9] despite their exemption of IEUs from permitting requirements. Although the EPA required revisions in the Title V programs of Florida,[10] North Dakota,[11] Hawaii,[12] and North Carolina,[13] the EPA's objections to those programs were based on grounds other than their general exemption of IEUs from the majority of permit content requirements.

The EPA urges this court to ignore the apparent inconsistency between its Washington decision and its approval of other state programs on the ground that the Washington decision represents the EPA's first thorough, well-reasoned discussion of whether IEUs may be exempted from § 70.6's permitting requirements. Even so, the EPA's rejection of Washington's IEU rules is undeniably a change "in agency interpretation [which] must be supported by a 'reasoned analysis'

over and above that required for an interpretation in the first instance." *Flagstaff Medical Center, Inc. v. Sullivan,* 962 F.2d 879, 886 (9th Cir.1992) (citation omitted).

█ The EPA may have the power to adjust its policies and rulings in light of experience and to announce new principles in an adjudicatory proceeding. *California Trucking Ass'n v. ICC,* 900 F.2d 208, 212 (9th Cir.1990). However, the EPA "may not depart, sub silentio, from its usual rules of decision to reach a different, unexplained result in a single case." *Id.* (citations omitted). To the contrary, the EPA must clearly set forth the ground for its departure from prior norms so that we may understand the basis of the EPA's action and judge the consistency of that action with the EPA's mandate. *Atchison, T. & S.F. Ry. v. Wichita Bd. of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973); *Arizona*

---

the title V permitting process"); 61 Fed.Reg. 18966 (1996) (granting full approval to Knox County's Title V program).

8. *See* Air Pollution Control Bd. of Jeff. Co., KY, Regs. 2.02 § 2 ("Notwithstanding the permitting requirements of section 1.1, applications and permits may not be required of the following ... [enumerating insignificant activities].") The EPA has proposed to approve Jefferson County's program in spite of its exemption of IEUs "from application *and permit* requirements." 60 Fed. Reg. 58035 (1995) (emphasis added).

9. Massachusetts's administrative code provides that "any emission unit(s) that are part of the following activities are exempt from the requirements of 310 CMR 7.00, [the Title V permitting program]." Mass.Regs.Code tit. 310, Appendix C § (5)(h). Despite this exemption of IEUs from permitting requirements, the EPA found that the Massachusetts program "substantially meets the requirements of 40 CFR ... [§] 70.6 with respect to permit content." 61 Fed.Reg. 3827, 3828 (1996).

10. *See* Fla.Admin.Code § 62–210.300(3) (exempting insignificant activities from "the permitting requirements of this chapter....."); 60 Fed.Reg. 49343, 49344 (1995) (requiring, as a condition of full approval, several changes of Florida's IEU rule, none of which pertained to the general exemption of IEUs from the permitting requirements of § 70.6).

11. In granting final interim approval to North Dakota's Title V program, the EPA's concern was that North Dakota set insignificant emission levels that were "too high to be considered reason-

able levels *for exempting those emission units from Title V operating permit requirements.*" 60 Fed.Reg. 35335, 35336 (1995) (emphasis added). Significantly, the EPA did not object to the premise that IEUs, if set at lower thresholds, could be exempted from Title V monitoring and compliance requirements. In fact, the EPA concedes that its North Dakota decision allows IEUs to be exempted from the "majority" of permit content requirements.

12. In its Hawaii decision, the EPA acknowledged that under Hawaii's proposed program, "insignificant activities need not be described on permit applications and *are essentially exempt from part 70 permitting.*" 59 Fed.Reg. 61549, 61550 (1994) (emphasis added). The EPA granted interim approval of Hawaii's program and noted that the IEU provisions were inappropriate because new permit exemptions would be granted without prior EPA approval. However, the EPA did not object to the exemption of IEUs from part 70 permitting requirements. *Id.*

13. The EPA acknowledges that North Carolina exempts IEUs from permit content requirements. *See* 15A N.C.Admin.Code § 2Q.0102(b) (enumerating insignificant activities that "do not need a permit or permit modification under this Subchapter"); 15A N.C.Admin.Code § 2Q.0508(aa) ("[t]he permit shall not include insignificant activities.") In reviewing the North Carolina program, the EPA did not even comment on the program's exemption of IEUs from monitoring, reporting and record-keeping requirements. Instead, the EPA required only that North Carolina revise its insignificant emissions threshold levels downward from 40 tons per year to 5 tons per year or less. 60 Fed.Reg. 44805, 44807 (1995); 60 Fed.Reg. 57357, 57359 (1995).

*Elec. Power Coop., Inc. v. United States,* 816 F.2d 1366, 1374 (9th Cir.1987).

In this case, the EPA fails to provide any explanation at all for its anomalous Washington decision. Instead, it flatly denies the obvious inconsistency between its rejection of the Washington program and its approval of other state programs. 60 Fed.Reg. 62992, 62995 (1995) ("the commentators can point to no instance in which EPA has approved a State program which expressly exempts IEUs with applicable requirements from the permit content requirements of section 70.6.").

The EPA relies heavily on *Puerto Rican Cement Co. v. United States EPA,* 889 F.2d 292 (1st Cir.1989), for the proposition that "[n]o large agency can guarantee that all its administrators will react similarly, or interpret regulations identically, throughout the United States." *Id.* at 299. In that case, the First Circuit found no significant, legally recognizable conflict that the EPA had to justify.

The EPA's reliance on *Puerto Rican Cement* is misplaced. Central to the holding in that case was the fact that the "deviant" interpretation occurred but once; EPA materials written both before and after the deviant letter were consistent with the EPA's position in the litigation. *Id.* Moreover, the deviant interpretation appeared in a letter written by a lower level official and did not reflect an unconscious change in established EPA policies. *Id.*

By contrast, there are at least eight EPA decisions published in the Federal Register that conflict with the Washington decision here. Further, the EPA issued the conflicting decisions both before and after the Washington decision. The EPA approved Ohio's IEU rules, which omit IEUs entirely from permits, on August 15, 1995. 60 Fed.Reg. 18790 (1995). The EPA then proposed to disapprove Washington's exemption of IEUs from § 70.6 permit content requirements on September 14, 1995. 60 Fed.Reg. 50166, 50173 (1995). Eleven days later, on September 25, EPA published its final interim approval of Florida's Title V program. 60 Fed. Reg. 49343 (1995). The EPA issued its final decision disapproving Washington's IEUs

rules on November 15, 1995. 60 Fed.Reg. 62997. That same day, the EPA published its final interim approval of North Carolina's Title V program. 60 Fed.Reg. 57357 (1995). Ten days later, the EPA published its proposal to approve the Jefferson County, Kentucky program. 60 Fed.Reg. 58033 (1995). Finally, the EPA published interim approval of Massachusetts' program on February 2, 1996, 61 Fed.Reg. 3827 (1996), and full approval of the Knox County, Tennessee program on April 19, 1996. 61 Fed.Reg. 18966 (1996). The fact that the EPA changed its mind and course four times refutes its argument that the Washington decision marked a reflected, deliberate, or lasting change of policy.

In sum, the EPA has approved numerous state programs omitting IEUs from § 70.6's monitoring and compliance requirements, but rejected Washington's IEU rules on that very same basis. The EPA's reliance on its broad supervisory power over state Title V programs does not provide an adequate basis to support its otherwise arbitrary treatment of Washington's IEU rules. *Cf. Arizona Elec. Power Coop., Inc.,* 816 F.2d at 1374 (agency's "broad discretionary power" is not "an adequate basis to support its otherwise arbitrary treatment" of a single case). We need not defer to the EPA because the EPA has abused its discretion in departing from its own prior standards. *Oil, Chem. and Atomic Workers,* 842 F.2d at 1143 n. 1. Because the EPA has failed to offer a sufficient explanation for its differential treatment of Washington's Title V program, we reverse EPA's decision on Washington's IEU rules. *McClaskey v. United States Dep't of Energy,* 720 F.2d 583, 587 (9th Cir.1983); *see also Motor Vehicle Mfrs. Ass'n. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) (reviewing court must not supply a reasoned basis for agency's action that agency itself has not given).

## *ATTORNEYS' FEES*

■ Petitioners seek an award of attorneys' fees and costs on appeal pursuant to § 307(f) of the Clean Air Act, which provides:

In any judicial proceeding under this section, the court may award costs of litiga-

tion (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.'

42 U.S.C. § 7607(f). An award of attorneys' fees is "appropriate" where petitioners have: (1) attained some success on the merits; and (2) contributed substantially to the goals of the Clean Air Act in doing so. *Abramowitz*, 832 F.2d at 1079 (citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682–84, 103 S.Ct. 3274, 3276–77, 77 L.Ed.2d 938 (1983); *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior*, 748 F.2d 523, 525–26 (9th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985)).

Because we reverse the EPA's Washington decision as an unexplained departure from precedent, petitioners have attained sufficient success on the merits to be eligible for attorneys' fees. *Ruckelshaus v. Sierra Club*, 463 U.S. at 682, 103 S.Ct. at 3276.

■ The second question—whether petitioners have contributed substantially to the goals of the Clean Air Act—is more difficult. We have yet to address whether a financially able, nongovernmental party having no more than its own economic interests at stake should be entitled to attorneys' fees under § 307(f).

The Fifth Circuit has answered this question in the affirmative. *Florida Power & Light Co. v. Costle*, 683 F.2d 941, 943 (5th Cir.1982). However, we decline to adopt the approach of the Fifth Circuit. We agree with the District of Columbia Circuit that the legislative history of § 19(d) of the Toxic Substances Control Act, 15 U.S.C. § 2618(d), which uses the same "appropriate" standard as the Clean Air Act, reveals the clearest expression of congressional purpose in enacting statutes of this type. *Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 7 n. 33 (D.C.Cir. 1982). During debate on the final version of § 19(d), Senator Magnuson, the ranking Senate Manager on the Conference Committee, stated:

It is not the intention of these provisions to provide an award for an individual or a group if that individual or group may stand to gain significant economic benefits through participation in the proceeding....

It is not intended that the provisions support participation of persons, including corporations or trade associations, that could otherwise afford to participate.... Whether or not the person's resources are sufficient to enable participation would include consideration of ... the likelihood that the person would seek to participate in the proceeding whether or not compensation was available.

112 Cong.Rec. 32,855 (1976) (remarks of Senator Magnuson), *as quoted in Alabama Power Co.*, 672 F.2d at 7 n. 33. Thus, the legislative history indicates that Congress neither intended to subsidize all litigation under the Clean Air Act nor contemplated that § 307(f) would benefit financially able parties who, out of their own substantial economic interests, would have litigated anyway. For this reason, we hold that petitioners are ineligible for a fee award under § 307(f).

■ Moreover, petitioners do not assert, nor do we find, that their litigation of this case has served the public interest in assisting in the interpretation and implementation of the Clean Air Act. *Carson–Truckee*, 748 F.2d at 525. Petitioners' status as prevailing parties, by itself, does not automatically establish that they have assisted in the proper implementation of the Act. *Cf. id.* ("[a]lthough a complainant may have substantially prevailed in an action, the award of costs and attorney fees does not automatically follow."). The issue under the Act has been relatively narrow and concerns only the anomalousness of the EPA's Washington decision. Petitioners do not identify any other Title V programs that this litigation will affect. We are simply confronted with an anomalous decision which the agency should correct. Because petitioners, who are financially able to and would have litigated regardless of any potential for a fee award, have not contributed substantially to the goals of the Clean Air Act, for this further reason we do not find an award of attorneys' fees to be appropriate.

## CONCLUSION

We reverse the EPA's decision with respect to Washington's proposed IEU regulations as an unexplained departure from precedent, and thus, as an abuse of discretion.

On remand, the EPA shall grant full approval to Washington's proposed Title V program, as modified to correct the four other deficiencies identified in the EPA's November 9, 1994, notice. Petitioners' request for attorneys' fees is denied. Each party shall bear its or her own costs on appeal.

PETITION FOR REVIEW GRANTED. REVERSED AND REMANDED.