**Robert J. POUND, Plaintiff,**

v.

**AIROSOL COMPANY, INC., et al. Defendants.**

No. CIV.A.02–2632–CM.

United States District Court, D. Kansas.

March 4, 2005.

Brett E. Nelson, George McCorkell Plews, Leonardo D. Robinson, Plews Shadley Racher & Braun, Indianapolis, IN, Jeffrey J. Simon, Ronald D. Marney, II, Husch & Eppenberger, LLC, Kansas City, MO, for Plaintiff.

Aaron C. McKee, John W. Cowden, Paul S. Penticuff, Baker, Sterchi, Cowden & Rice, L.L.C., Kevin J. Odrowski, Kansas City, MO, David E. Rogers, Foulston Siefkin LLP, Wichita, KS, Brian F. Huebsch, Anderson & Jahde, PC, Denver, CO, Paul M. Croker, Richmond M. Enochs, Amy Rager Ashelford, Wallace, Saunders, Austin, Brown & Enochs, Chtd.—OP, Overland Park, KS, for Defendants.

### *MEMORANDUM AND ORDER*

MURGUIA, District Judge.

On December 18, 2002, plaintiff Robert J. Pound brought several claims against several defendants regarding the sale and distribution of a pesticide called Black Knight. In one such claim, plaintiff brought suit under the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(1), alleging violations of emissions standards set forth under the Clean Air Act, 42 U.S.C. § 7401 *et seq.* On March 10, 2004, the court granted plaintiff's Motion for Partial Summary Judgment against defendants Airosol Company, Inc. ("Airosol") and Chad Brown, Robyn Markland, Pro Exotics, Inc., and Pro Exotics Reptiles, Inc. ("Separate Defendants") finding that, as a matter of law, these defendants' sale and distribution of Black Knight violated the Clean Air Act. Pending before this court is Plaintiff's Second Motion for Partial Summary Judgment (Doc. 204).

## I. Facts

Plaintiff Robert J. Pound owns a reptile business called Pro Products, Inc. In the 1980s, plaintiff started developing Provent–a–Mite, a product designed to treat and eradicate ectoparasites such as mites on reptiles. Plaintiff patented Provent–a–Mite in September of 2000 and began marketing and selling it that same year.

Airosol manufactures, advertises, distributes, and sells the pesticide Black Knight. Black Knight is a direct competitor of Provent–a–Mite, as both products are sold to reptile enthusiasts for use on reptile ectoparasites. Black Knight is registered under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") (EPA Reg No. 901–82) for treatment of various household pests. Black Knight is not registered or approved for use in the treatment of snake mites or other pests that affect reptiles or other cold blooded animals or for direct use on animals.

Separate Defendants breed and sell live reptiles, as well as sell reptile supplies, including Black Knight, through the Pro Exotics, Inc. storefront and website. Brown and Markland, named as individual defendants, are the owner and day-to-day manager of the business, respectively.

Black Knight is an aerosol product that contains hydrochlorofluorocarbons 22 and 142b (monochlorodifluoromethane and monochlorodifluoroethane, respectively), both of which are Class II substances as defined by section 602(b) of the Clean Air Act, 42 U.S.C. § 7671a(b). The Clean Air Act bans use of Class II substances unless a manufacturer has applied, prior to January 1, 1994, for an exception or exemption as set forth by statute or regulation. The granting of such an exemption allows the manufacture, sale, and distribution of Black Knight under certain conditions.

Airosol alleges that it submitted a request, dated December 22, 1993, for an exemption for Black Knight. However, the Environmental Protection Agency's ("EPA") FIFRA file on Black Knight has no record of such a request. By letter dated August 19, 2002, EPA issued a Section 114, 42 U.S.C. § 7414(a)(1), request to Airosol requiring Airosol to submit information regarding Airosol's manufacture, sale, and distribution of aerosol products or other pressurized dispensers which contain a Class I or Class II substance. Airosol, by letter dated December 19, 2002, responded to the EPA's Section 114 request and alleged that it had requested an exemption for Black Knight in December 1993 but that it had received no correspondence from EPA regarding that request. Since the time of its alleged application for exemption, Airosol has filed with the EPA its yearly Pesticide Report for Pesticide–Producing Establishments and has included Black Knight on its report.

On March 10, 2004, the court granted plaintiff's Motion for Partial Summary Judgment against Airosol and Separate Defendants finding that, as a matter of law, the defendants' sale and distribution of Black Knight violated the Clean Air Act.

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement

to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *see Adler,* 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler,* 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut," rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### III. Analysis

■ Plaintiff first requests an injunction to prevent defendants from selling Black Knight. Plaintiff alleges that Separate Defendants continued to offer Black Knight for sale as late as April 27, 2004, and Airosol admitted to offering Black Knight for sale until August 26, 2004. On both of these dates, the sale of Black Knight was illegal pursuant to this court's March 10, 2004 Order, which held that defendants' sale and distribution of Black Knight violated the Clean Air Act. Both defendants argue that an injunction is unnecessary because plaintiff has not produced any evidence that defendants continue to sell Black Knight. While the court certainly does not condone defendants' sale of Black Knight after this court's March 10, 2004 Order, plaintiff has failed to produce any evidence tending to show that defendants are still selling Black Knight. Thus, the court denies plaintiff's request for an injunction.

Plaintiff next requests attorney's fees [1] pursuant to section 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d), which states: "The court, in issuing any final order in any action brought pursuant to subsection (a) of this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 42 U.S.C. § 7604(d). Plaintiff argues that by successfully litigating his citizen suit, he has performed an important public service and should therefore be awarded the cost of his litigation. Defendants, on the other hand, argue that attorney's fees are not mandated by the Clean Air Act; instead, they may be awarded at the court's discretion. In addition, defendants argue that plaintiff did not bring his citizen suit to further the objectives of the Clean Air Act, but rather brought it to protect plaintiff's economic interest in eliminating Black Knight, a di-

---

1. While the court believes plaintiff's request for attorney's fees would have been more appropriately asserted in a separate motion for attorney's fees rather than in a summary judgment motion, to expedite litigation, the court will nevertheless address plaintiff's request as if it were filed as a motion for attorney's fees.

rect competitor of plaintiff's product Provent-a-Mite, from the market. Defendants further argue that the time and rate of plaintiff's litigation expenses are unreasonable, and that plaintiff's accounting of his time spent litigating this claim does not appropriately segregate his time spent on the Clean Air Act claim from his time spent litigating his other claims against defendants.

■ The court is cognizant of the fact that it has discretion in deciding whether to award plaintiff his litigation costs. The court further has discretion to determine what constitutes a reasonable fee. At issue here is whether awarding litigation costs is "appropriate" pursuant to the fee-shifting provision of the Clean Air Act, 42 U.S.C. § 7604(d). An award of attorney's fees is appropriate where the claimant has attained some success on the merits. *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 682–84, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). In addition, some courts have held that an "appropriate" award of attorney's fees also requires the petitioner to have "contributed substantially to the goals of the Clean Air Act." *W. States Petroleum Ass'n v. EPA,* 87 F.3d 280, 286 (9th Cir. 1996) (citing *Abramowitz v. EPA,* 832 F.2d 1071, 1079 (9th Cir.1987)).

None of the parties' motions cited authority discussing the appropriateness of awarding litigation expenses under the Clean Air Act's fee-shifting provision or a similar statute when the prevailing party brought suit under the Clean Air Act's citizen suit provision and stands to gain significant financial interest in doing so. The Tenth Circuit has yet to speak to this issue, and there is currently a circuit split between several circuits. *See Fla. Power & Light Co. v. Costle,* 683 F.2d 941, 942–43 (5th Cir.1982) ("There is no indication that Congress meant to limit [Clean Air Act] section 307(f) awards to public interest groups, nor is there any basis for disquali-

fying a party from receiving an award merely because that party is solvent and has a financial interest in the outcome of the litigation.") (citation omitted); *Ala. Power Co. v. Gorsuch,* 672 F.2d 1, 5 (D.C.Cir.1982) ("EPA's main contention in essence is that although the District prevailed on both of the issues it raised, it does not qualify for attorneys' fees under the Clean Air Act because the substantive position it took was not 'pro-environment,' and because it litigated in furtherance of its economic interests and therefore did not need the prospect of an attorneys'-fee recovery as an inducement to advocate in the public interest. The suggestion that fee awards are limited to parties asserting 'pro-environment' claims has no support in the words of the statute or its legislative history, and we accordingly reject it."); *Diamond Shamrock Exploration Co. v. Hodel,* 1990 WL 136756, at *4 (E.D.La. Sept. 14, 1990) ("The fact that Diamond Shamrock had a pecuniary interest in the outcome matters little. Nothing in the statute or the legislative history precludes the recovery of fees by a plaintiff who happens to have a financial stake in the outcome and adequate financial resources with which to protect that stake."). *But see W. States Petroleum Ass'n,* 87 F.3d at 286 (discussing the legislative history of § 19(d) of the Toxic Substances Control Act, 15 U.S.C. § 2618(d), which uses the same "appropriate" standard as the Clean Air Act and holding that "the legislative history indicates that Congress neither intended to subsidize all litigation under the Clean Air Act nor contemplated that § 307(f) would benefit financially able parties who, out of their own substantial economic interests, would have litigated anyway").

This court finds it significant that the Tenth Circuit has not yet addressed this particular issue, and that the appellate courts who have spoken are split. Fur-

thermore, the Clean Air Act's fee-shifting provision states that a court *may* grant litigation costs, which unambiguously means that litigation costs are not mandated by the Clear Air Act but that courts have discretion in deciding whether the granting of litigation costs is appropriate in any particular instance. Taking each of these factors into consideration, at this time the court is unwilling to exercise its discretion and award plaintiff's litigation costs.

**IT IS THEREFORE ORDERED** that Plaintiff's Second Motion for Partial Summary Judgment (Doc. 204) is denied.